IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KHALID MOHAMMAD,

    Plaintiff,

v.                                                  CIV 14-307 JCH/KBM

DEVONNA ROBERTS,

    Defendant.

**PROPOSED FINDINGS AND CONCLUSIONS OF LAW**

    The United States District Judge presiding over this case has referred it to me for all pretrial matters and to recommend a final disposition. *See ORDER, Doc. 19*. Two motions are now pending, one possibly dispositive. The possibly dispositive motion is Defendant's Motion for Summary Judgment *(Doc. 23)*, which seeks judgment as a matter of law on all of Plaintiff's remaining claims. The non-dispositive motion is Plaintiff's Motion to Amend the Complaint *(Doc. 25)*. I recommend that the former be granted in part and denied in part. I further recommend that the latter motion be denied.

**I.    BACKGROUND**

    In late 2013, the First United Methodist Church in Albuquerque accused Plaintiff of damaging a glass window at the church and, two days later, damaging the church's front door. On November 21, 2013, Plaintiff was confronted with the accusations by two Albuquerque Police Department (APD) officers. *Doc. 1.* Defendant Officer Roberts showed Plaintiff surveillance camera footage of Plaintiff breaking the Church's windows,

*id.* at 7,[1] arrested Plaintiff and then transported him to the police station in handcuffs. *Id.* Plaintiff alleges that Officer Roberts "did not provide any meals to the Plaintiff" and that he remained in handcuffs the entire time he was held in a holding cell at the station. *Id.*

Plaintiff was then taken to the Metropolitan Detention Center (MDC), but that transporting officer is not identified. *Id.* Plaintiff contends that while housed at MDC, he was kept in a "segregation" unit without cause and was not released until January 11, 2014. *Id.* at 7-8. According to the Complaint, Plaintiff "was never prosecuted . . . [and] never received his property that the APD officers took when he was arrested." *Id.* Plaintiff's Complaint alleges a kaleidoscopic array of government actors violated his rights to freely access the courts and to freedom from unlawful arrest, excessive bail, "segregation," "starvation," and entrapment under the Fourteenth Amendment.

Presiding District Judge Judith Herrera dismissed Plaintiff's claims against every defendant save Defendant Roberts because his factual allegations failed to set forward claims for relief against those parties. *See* ORDER *(Doc. 4).* But Judge Herrera denied dismissal of Plaintiff's claims against unnamed APD officers and Metropolitan Detention Center staff given allegations that they starved and unnecessarily segregated him during his detention at MDC. Judge Herrera indicated, however, that at some point, Plaintiff needs to amend his complaint to name the officers he contends are responsible on those claims.

As to Defendant Roberts, Judge Herrera held that the Complaint set out plausible allegations that Defendant arrested Plaintiff without a warrant or probable cause. *See*

---

[1] The Complaint alleges that the footage only revealed "an individual throwing a small rock to the side. The [video recording] did not reveal any [Church] windows or any windows breaking." Complaint at 7.

ORDER *(Doc. 4)* at 11.[2] Defendant has now moved for summary judgment on Plaintiff's unlawful arrest claim based on the doctrine of qualified immunity. Defendant argues there can be no genuine dispute that the arrest of Plaintiff was supported by probable cause and pursuant to a lawfully-obtained warrant. Motion at 6. Plaintiff did not respond to Defendant's Motion, and instead sought to amend his complaint to recharacterize his claims as municipal policy or practice claims against the City of Albuquerque and Bernalillo County.

      Defendant's motion for summary judgment asserts that the following facts are now beyond dispute. First, APD Officer Elrick had probable cause to believe that Plaintiff had vandalized the First United Methodist Church because he could recognize Plaintiff based on previous encounters and because he saw surveillance videos of Plaintiff throwing objects through the Church's windows. Motion at 1–2. Second, Officer Roberts later personally encountered Plaintiff, and she was able to obtain a positive identification of Plaintiff from Officer Elrick. *Id.* at 3. Third, Defendant obtained an arrest warrant for Plaintiff based on charges of criminal damage to property. *Id.* Finally, the criminal property damage charges were dismissed not for lack of probable cause, but because Plaintiff was found incompetent to stand trial. *Id.*

---

[2] The Court has considered whether Judge Herrera also intended to deny dismissal of what could be construed as a similar "starvation" claim against Defendant Roberts premised upon her alleged "failure to serve the Plaintiff with a meal. . . ." *Complaint* at 13. The Tenth Circuit has held that failing to provide food to a prisoner for 50 ½ hours could state a claim for cruel and unusual punishment and thereby violate the Eighth Amendment. *Dearman v. Woodson*, 429 F.2d 1288 (10th Cir.1970). Here, however, Plaintiff alleges that Defendant Roberts failed to provide him with a single meal during the short booking process. The Court has serious misgivings as to whether this allegation could support a finding of deliberate indifference to Plaintiff's well-being sufficient to rise to the level of a constitutional violation of Plaintiff's due process rights under *Bell v. Wolfish*, 441 U.S. 520 (1979). *See, e.g., Watkins v. Rogers*, 525 F. App'x 756, 759 (10th Cir. May 17, 2013) ("We conclude that a single violation of Watkins's religious diet is not sufficient to demonstrate an Eighth Amendment violation."). Although Judge Herrera spoke of Plaintiff's "claims" against Defendant Roberts, her analysis addressed only the survival of Plaintiff's claim for unlawful arrest against Defendant. *See* ORDER, *Doc. 4* at 11. But because Judge Herrera did not expressly dismiss the "starvation" claim against Defendant Roberts and the motion for summary judgment does not even mention it, I feel constrained to find that it remains intact.

**II.     STANDARD OF REVIEW**

    A)     <u>Summary judgment and assertions of qualified immunity</u>

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

When an individual defendant asserts qualified immunity, however, the procedure for analyzing this defendant's motion for summary judgment is slightly different. Qualified immunity protects government officials who are required to exercise their discretion by shielding them from liability for harm caused by reasonable mistakes. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Therefore, any time a defendant asserts qualified immunity at the summary judgment stage, the burden

shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of defendant's conduct. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). Only if the "'plaintiff successfully carries his two-part burden," upon a consideration of the facts in the light most favorable to the plaintiff, does the "defendant bear[] the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014) (quoting *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir. 1996).

When, as here, the nonmoving party fails to respond to a motion for summary judgment under Rule 56, summary judgment may not be granted automatically. Rather, the need for a nonmovant to respond (and, in the absence of a response, the need for the reviewing court to grant) a motion for summary judgment only arises once the moving party satisfies its initial burden under Rule 56(c) of showing there is no genuine dispute as to material fact and judgment as a matter of law is appropriate. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61 (1970). If the evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* at 160.

    B)    <u>Plaintiff's claims for unlawful arrest in violation of the Fourth and Fourteenth Amendments</u>

The Fourth Amendment prohibits "unreasonable . . . seizures" and the issuance of warrants "but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. Amend. IV. "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to

5

believe that the person about to be arrested has committed or is about to commit a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 n.2 (2003). Likewise, issuance of an arrest warrant requires that the totality of the circumstances set forth in a sworn affidavit "demonstrat[e] a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Cleave v. City of Maryville, Ks.*, 2003 WL 110441 at *3 (D. Kan. 2003).

      C)    <u>Claims for unconstitutional conditions in pretrial confinement</u>

The Fourteenth Amendment Due Process Clause protects a pretrial detainee from punishment prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979). "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Pierce v. Cnty of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (citing *Bell*, 441 U.S. at 535 n.16). Pretrial detainees, like convicted prisoners, have a constitutionally protected right to food, shelter, clothing, and medical care.

      D)    <u>Motions to amend a complaint under Rule 15(a)(2)</u>

Rule 15(a)(1) allows a party to amend its pleadings once as a matter of course if the amendment is made less than 21 days after the pleading is initially served or after the served party makes a motion to dismiss under Rule 12. Once 21 days have passed, however, a motion to amend a pleading requires permission of the opposing party or the court. Fed. R. Civ. P. 15(a)(2). A court should "freely give leave [to amend] when justice so requires." *Id.*

6

### III. Discussion

#### A) <u>Defendant's motion for summary judgment on Plaintiff's unlawful arrest claim should be granted.</u>

Defendant submitted APD Officer Mark E. Elrick's sworn affidavit as well as her own in conjunction with her motion for summary judgment. *See Docs. 23-1 & 2*. These affidavits establish that Officer Elrick was shown surveillance videos of someone throwing a rock and thereby breaking the glass in the front door of First United Methodist Church. *Doc. 23-1* at 2. Officer Elrick testifies in his affidavit that he "immediately recognized" that individual as the plaintiff, Khalil Mohammad, "a transient who frequents the area" and is "well known" to him. *Id.* In fact, Officer Elrick had obtained a criminal summons and was actively looking for Plaintiff when Officer Roberts requested Officer Elrick's assistance on November 21, 2013, the day of Plaintiff's arrest. *Id.* Once Officer Elrick arrived and positively identified Plaintiff as the person that he had observed in the surveillance videos breaking the Church's windows, Defendant Roberts obtained an arrest warrant and booked Plaintiff. *Doc. 23-2* at 2.

Defendant also attached the affidavit she used to obtain a warrant to arrest Plaintiff. *Doc. 23-3*. The affidavit provides even more detail about Plaintiff's arrest. Apparently, criminal damage to property was an ongoing problem in the area. In the weeks before Plaintiff's arrest, there were more than 15 reported incidents involving rocks, bricks, and water meter covers being thrown through windows at businesses in the surrounding area. *Id.* at 2. Based on the affidavit, a New Mexico state court judge issued a warrant to arrest Plaintiff to answer charges for criminal damage to the church property. *Doc. 23-4*.

7

Based upon the above uncontested facts, I conclude that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for arrest without probable cause for two reasons. First, the issuance of a warrant by a neutral and detached magistrate is presumed to be supported by probable cause. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). By attaching an arrest warrant for Plaintiff to her motion for summary judgment, Defendant made the required showing under *Adickes* that she had probable cause to arrest Plaintiff. By failing to respond to the motion, Plaintiff has not rebutted this ground for showing that the arrest was supported by probable cause and, therefore, summary judgment on Plaintiff's claim for unlawful arrest is proper.

Second, I conclude that Defendant's affidavit and the affidavit of Officer Elrick establish that Defendant had probable cause to arrest Plaintiff even in the absence of a warrant. Officer Elrick had seen surveillance footage of someone he confidently believed to be Plaintiff breaking the First United Methodist Church's windows. Officer Elrick told Defendant Roberts that he was looking for Plaintiff, and, indeed, positively identified Plaintiff before she arrested him. While the record does not indicate whether Defendant Roberts also observed the video footage, "'an officer may rely on another officer's determination of probable cause to make an arrest' even if the arresting officer does not have firsthand knowledge of the facts supporting probable cause." *Bolger v. District of Columbia*, 608 F.Supp.2d 10, 23 (D.D.C. 2009) (quoting *Barham v. Salazar*, 556 F.3d 844, 850 (D.C. Cir. 2009) (Henderson, J., concurring)).

      B)    <u>Plaintiff's claim for unconstitutional treatment while in pretrial confinement</u>

Defendant's motion for summary judgment seeks to dismiss Plaintiff's entire complaint. The summary judgment motion, however, makes no mention of Plaintiff's

8

claim that Defendant Roberts "did not provide any meals to the Plaintiff." *Complaint* at 7. This failure is perhaps understandable because the Judge Herrera allowed Plaintiff's "claims" against Defendant Roberts to proceed but actually only analyzed Plaintiff's claim for unlawful arrest against her. *See* ORDER, *Doc. 4* at 11. Therefore, while I conclude that summary judgment should not be entered on Plaintiff's "starvation" claim against Defendant Roberts, I recommend that Defendant be given leave to file a renewed motion for summary judgment on that claim.[3] *See supra* note 2.

        C)     <u>Plaintiff's motion to file an amended complaint should be denied.</u>

As I noted above, Rule 15(a)(2) requires a court to freely give leave to a party seeking to amend a pleading. "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

Plaintiff's amended complaint apparently abandons his claims for arrest without probable cause and instead seeks to assert new claims for allegedly detaining him without prosecuting him for any crime. Doc. 25 at 7. The claims in Plaintiff's amended complaint can be grouped into two categories: (1) claims against Defendant Roberts, Bernalillo County, APD, the City of Albuquerque, and District Attorney Kari Brandenberg for failing to prosecute Plaintiff after arresting him and booking him into MDC; and

---

[3] Although it is the Plaintiff's burden to demonstrate that Defendant violated a clearly established Constitutional right, it is the Defendant's burden to "demonstrate good faith performance of discretionary duties" in order to successfully assert qualified immunity. *Karns v. Dix*, 394 F.Supp.2d 1102, 1006 (D.S.D. 2005) (quotation omitted). Because Defendant has not asserted that providing food to Plaintiff during his pretrial detention was not an aspect of her discretionary duties or that Defendant provided Plaintiff with adequate food, I conclude that Defendant has not made a sufficient showing to assert qualified immunity to Plaintiff's starvation claim..

9

(2) claims against former-Chief Ramon Rustin, MDC, and the Bernalillo County for ignoring his demands while confined at MDC to be taken to court and prosecuted.

In the first category of claims, Plaintiff alleges that Defendant Roberts, Brandenberg, and city law enforcement officials "continued the Plaintiff's imprisonment in MDC from November 21, 2013 to January 11, 2014 without an underlying prosecution. . . ." *Id.* at 10. Plaintiff asserts that the City of Albuquerque, APD, and Bernalillo County hatched an unconstitutional "scheme, through [Defendant] Roberts and APD, that deprived the plaintiff of his . . . [r]ights secured by the 14th [sic] Amendment [for] imprison[ing] [Plaintiff] in MDC without an underlying prosecution, court order, conviction, guilt or consent by the plaintiff for incarceration from November 21, 2013 to January 11, 2014 [(51 days)]." *Doc. 25* at 12.

In the second category of claims, Plaintiff avers that Defendant Roberts, Brandenberg, Rustin, "the Metropolitan Court's Senior Judge for the Criminal division," and various MDC staff ignored his demands to be taken to the Court (presumably for prosecution). *Id.* at 10–11 & 15–16. Plaintiff claims that Rustin "promulgat[ed] a scheme that deprived the [P]laintiff of his [Constitutional] rights . . . by ignoring [P]laintiff's requests for transportation to court or releasing him from imprisonment. . . ." *Id.* at 13.

Plaintiff asserts that the City of Albuquerque, Bernalillo County, APD, and MDC are liable under *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978) because his alleged constitutional injuries were the result of an unconstitutional policy or practice – or in Plaintiff's words, a "scheme." Liberally construing Plaintiff's complaint (as I must, given Plaintiff's pro se status), it appears that Plaintiff's amended complaint asserts that the municipal entities named above had a policy of confining people in MDC without an

underlying prosecution of a charge and then releasing them without any formal adjudication of their guilt or innocence.[4]

    1)    <u>Granting Plaintiff's motion to amend would interpose undue delay.</u>

As to the first *Bylin* factor, I conclude that Plaintiff's motion for leave to amend would cause undue delay in the resolution of this case. Plaintiff filed the motion to amend after Defendant filed a motion for summary judgment on his claims. Granting the motion to amend would require Defendant (and the other defendants) to re-draft motions to dismiss or motions for summary judgment. This would cause unnecessary and undue delay in the proceedings.

    2)    <u>Amendment would not unduly prejudice Defendant Roberts.</u>

Granting Plaintiff's Motion to Amend would require Defendant to revise her motion for summary judgment in order to address Plaintiff's *Monell* claims of municipal liability and probably submit additional evidence relating to Plaintiff's pretrial confinement. But "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin*, 568 F.3d at 1230. Therefore, I conclude that amendment would not unduly prejudice the Defendant.

    3)    <u>Bad faith or dilatory motive</u>

Plaintiff filed a motion to amend the complaint more than seven months after the Judge Herrera dismissed most of his claims as frivolous. Nothing in the record suggests that Plaintiff has any justification for waiting this long to file a motion to amend. Moreover, Plaintiff's motion to amend was filed only after Defendant filed her motion for summary judgment on Plaintiff's unlawful arrest claims, and Plaintiff failed to respond to

---

[4] Plaintiff also seeks to amend his complaint in order to increase the amount of compensatory damages he seeks from $10 million in the original complaint to $250 million.

11

that motion. These observations provide strong circumstantial evidence that Plaintiff has filed the motion to amend in bad faith in an attempt to turn the judicial process into a game of "Whac-a-Mole."[5]

    4)    <u>Futility</u>

Defendant further argues that it would be futile to allow Plaintiff to amend his complaint because it seeks to assert claims against many of the parties who were previously dismissed from the case. This argument does not take into account that the proposed amended complaint recharacterizes some of his claims as seeking relief for injuries caused by alleged municipal policies and practices under *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). Indeed, Judge Herrera explicitly noted that Plaintiff could amend his claims in order to cure defects in the complaint in order to assert meritorious claims, also noted in multiple instances that the dismissals were without prejudice, and further explained that Plaintiff's liability claims premised upon *respondeat superior* liability lacked merit. She observed, however, that a *Monell* theory of liability could possibly support a claim against the municipal and county entities. *See Doc. 4* at 7, 7 n.2.

Nonetheless, I conclude that allowing Plaintiff to pursue a *Monell* theory of liability against APD, Albuquerque, Bernalillo County, and MDC based on the length of his pretrial confinement would be an exercise in futility. My analysis begins with the rule that pretrial confinement violates the Due Process Clause of the Fourteenth Amendment when it amounts to a punishment, rather than a reasonable measure

---

[5] From http://en.wikipedia.org/wiki/Whac-A-Mole: "The term 'Whac-a-mole' (or 'Whack-a-mole') is used colloquially to denote a repetitious and futile task: each time an adversary is 'whacked' it only pops up again somewhere else." (Last visited March 5, 2015).

undertaken in service of a legitimate state interest. *Bell v. Wolfish*, 441 U.S. 520, 536 (1979).

Applying this rule to Plaintiff's proposed amended complaint, I conclude that granting his motion to amend would be futile for two reasons. First, Plaintiff's amended complaint takes issue with various government actors' refusal to acknowledge his demands for release, which (again allegedly) caused Plaintiff to suffer a needlessly lengthy period of pretrial confinement. But the complaint itself states that Plaintiff was only held in pretrial confinement for 51 days. Both federal and New Mexico State laws allow for up to 70 days and 182 days from the date of arraignment until the start of trial, respectively. *See* 28 U.S.C. § 3161(c)(1) & Rule 7-506 NMRA. It would be futile to grant Plaintiff's motion to amend, then, because the length of his confinement did not violate federal or New Mexico law.[6]

Second, Plaintiff's amended complaint asserts that he was imprisoned without any pending criminal charges or prosecution. But these assertions are flatly contradicted by the evidence submitted in support of Defendant Roberts' motion for summary judgment. Uncontradicted documentary evidence – a criminal complaint and an application for a warrant, both of which were approved by a neutral state court judge – conclusively establish that Plaintiff was subject to actual criminal prosecution the day he was booked into MDC. *See Doc. 23-3, 23-4* (criminal complaint and arrest warrant); Rule 7-201(A) NMRA ("A criminal action is commenced by filing [a complaint] with the [Metropolitan] court....").

---

[6] The Speedy Trial Act, 28 U.S.C. § 3161(c), is far more stringent (absent some abnormal statutory exclusion of time, such as for pretrial appeals) than the requirements imposed by the Sixth Amendment. *United States v. Loud Hawk*, 474 U.S. 302, 305 n.1 (1986). Although New Mexico's 182-day rule is longer, this difference is of no import here since Plaintiff's pretrial confinement would not have violated the Speedy Trial Act if he had been in pretrial confinement on federal criminal charges.

As to assertions that Plaintiff was released "[without] any justification for his term of incarceration[,]" this version of events is also flatly contradicted by the evidence supporting Defendant Roberts' motion for summary judgment. As I have already concluded, Plaintiff was lawfully arrested and charged because Defendant had probable cause to believe Plaintiff had committed a crime and he was held at MDC pending trial on that charge. The undisputed evidence establishes that the charges were dismissed the day before he was released on motion of Plaintiff's counsel because a forensic psychologist had determined that Plaintiff was not competent to stand trial. *See Doc. 23-5* at 1–2. The absence of adjudication does not render the charge a nullity.

## CONCLUSION

I recommend that Defendant Roberts' motion for summary judgment be granted in part and denied in part. The motion should be granted as to Plaintiff's claim for unlawful arrest, but denied as to Plaintiff's "starvation" claim, on which Defendant should be given an opportunity to file a renewed motion. I further recommend denial of Plaintiff's motion to amend because granting the motion will cause undue delay, the motion was likely submitted with a dilatory motive, and amendment would be futile.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE